UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------  X
RUDOLPH COSENTINO,                       :    Case No.: _____
                                         :
            Plaintiff,                   :    DEMAND FOR JURY TRIAL
                                         :
       -against-                         :
                                         :
ISRAMCO, INC., HAIM TSUFF, JOSEPH FROM,   :
MAX PRIDGEON, NIR HASSON, FRANS          :
SLUITER, and ASAF YARKONI,               :
                                         :
            Defendants.                  :
---------------------------------------  X
```

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Rudolph Cosentino, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against Isramco, Inc. ("Isramco" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Isramco, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition by Naphtha Israel Petroleum Corporation Ltd., an Israeli public company ("Naphtha Corp."), Naphtha Holding Ltd., an Israeli private company and a direct wholly owned subsidiary of Naphtha Corp. ("NHL"), I.O.C. - Israel Oil Company, Ltd., an Israeli private company and a subsidiary of Naphtha ("Parent"), and Naphtha US Oil, Inc., a Delaware

corporation and wholly owned subsidiary of Parent ("Merger Sub" and, together with Naphtha Corp., NHL and Parent, "Naphtha").

2.      On May 20, 2019, Isramco entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Merger Sub will be merged with and into the Company, with the Company continuing as the surviving entity and becoming a privately-held subsidiary of Parent and NHL (the "Proposed Transaction" or the "Merger"). The Proposed Transaction is a "going private transaction" under SEC rules. Mr. Haim Tsuff, the Company's Chairman of the Board, Co-Chief Executive Officer and President, who through various entities controls Naphtha, beneficially owns approximately 73.01% of the outstanding common stock ("Tsuff").

3.      Upon completion of the merger, Isramco shareholders will receive $121.40 in cash per share of common stock (the "Merger Consideration").

4.      On September 6, 2019, in order to convince Isramco public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy either omits or contains materially incomplete and misleading information concerning: (i) free cash flow projections for the Company; (ii) inputs, assumptions and individual multiples underlying the valuation analyses performed by the financial advisor; (iii) the background of the merger and the independence of the Special Committee.

6.      The special meeting of Isramco's stockholders to vote on the Proposed Transaction is scheduled for 9:00 a.m. on October 22, 2019 (the "Shareholder Vote"). Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote, so that Isramco's stockholders can properly exercise their corporate voting

rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Isramco's public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."  *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court."  *Id.* at 1316.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C.

§ 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Isramco's common stock trades on the NASDAQ, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Isramco common stock.

12.    Defendant Isramco is a public company incorporated under the laws of Delaware with principal executive offices located at 1001 West Loop South, Suite 750, Houston, Texas 77027. Isramco's common stock is traded on the NASDAQ under the ticker symbol "ISRL."

13.    Defendant Tsuff is, and has been at all relevant times, a director of the Company, the Chairman of the Board of Directors, Chief Executive Officer, and President. Tsuff controls Naphtha through various entities, and beneficially owns approximately 73.01% of the outstanding common stock.

14.    Defendant Joseph From is, and has been at all relevant times, a director of the Company.

15.    Defendant Max Pridgeon is, and has been at all relevant times, a director of the Company, he is also a member of the special committee of the Board (the "Special Committee").

16.    Defendant Nir Hasson is, and has been at all relevant times, a director of the Company, he is also a member of the Special Committee.

17.    Defendant Frans Sluiter is, and has been at all relevant times, a director of the Company.

18.    Defendant Asaf Yarkoni is, and has been at all relevant times, a director of the

Company, he is also a member of the Special Committee.

19.    The defendants identified in paragraphs 13 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Isramco, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

20.    Isramco is an independent oil and natural gas company, it engages in the exploration, development, and production of oil and natural gas properties located onshore in the United States and offshore Israel. It operates in two segments, Oil and Gas Exploration and Production; and Production Services. The Oil and Gas Exploration and Production segment owns working interests in oil and gas wells in Louisiana, Texas, New Mexico, Oklahoma, Wyoming, Utah, and Colorado; and operates approximately 422 producing wells located primarily in Texas and New Mexico. It also has overriding royalty interests in the Tamar Field located in offshore Israel. This segment sells its oil and natural gas to independent marketers, oil and natural gas companies, and gas pipeline companies. The Production Services segment operates a fleet of production servicing rigs and trucks that provide a range of production services, including completion of newly-drilled wells; maintenance and workover of existing wells; fluid transportation; and related oilfield services, as well as plugging and abandonment of wells to oil and gas exploration and production companies. As of December 31, 2018, the company had estimated total proved oil, natural gas reserves, and natural gas liquids, which include approximately 40,267 thousand barrels ("MBbls") of oil equivalent comprising 2,125 MBbls of oil; 223,915 million cubic feet of natural gas; and 823 MBbls of natural gas liquids, as well as 33 production servicing rigs primarily in Texas and New Mexico. Isramco was founded in 1982.

21.     Pursuant to the terms of the Merger Agreement, each share of Isramco common

stock will be converted into the right to receive $121.40 in cash per share of common stock.

22.     On May 20, 2019, Isramco and Naphtha issued a joint press release announcing

the Proposed Transaction, which states in relevant part:

### ISRAMCO, INC. ENTERS INTO DEFINITIVE MERGER AGREEMENT; TRANSACTION WOULD RESULT IN COMPANY GOING PRIVATE

HOUSTON, TX, May 20, 2019 (GLOBE NEWSWIRE) -- Isramco, Inc. (NASDAQ CM: ISRL) (the "Company," "Isramco," "we" or "our") announced today that it has signed a definitive merger agreement with Naphtha Israel Petroleum Corporation Ltd. ("Naphtha"), Naphtha Holding Ltd. ("NHL"), I.O.C. – Israel Oil Company, LTD. ("IOC") and Naphtha US Oil, Inc. (each a wholly owned subsidiary of Naphtha, and, together with Naphtha, the "Naphtha Group"), pursuant to which the Naphtha Group will acquire all of the common stock of Isramco issued and outstanding immediately prior to the effective time of the merger. The holders of the Company's outstanding shares of common stock will receive US $121.40 per share in cash, other than (i) the shares owned by NHL or IOC, (ii) the shares held by Isramco as treasury stock and (iii) the shares in respect of which appraisal rights have been properly and validly exercised under Delaware law.

The US $121.40 per share price represents a premium of approximately 10% over the US $110.36 purchase price per share initially offered by Naphtha and a premium of approximately 4.4% over the 30 trading-day average price of the Company's common stock as of May 17, 2019. Mr. Haim Tsuff, who through various entities controls Naphtha, beneficially owns approximately 73.0% of the outstanding common stock of Isramco.

The Company's Board of Directors, acting on the unanimous recommendation of the special committee formed by the Board of Directors (the "Special Committee"), approved the merger agreement and the transactions contemplated by the merger agreement and resolved to recommend that the Company's stockholders adopt the merger agreement and the transactions contemplated by the merger agreement. The Special Committee, which is comprised solely of independent and disinterested directors of the Company who are unaffiliated with the Naphtha Group or management of the Company, exclusively negotiated the terms of the merger agreement with the Naphtha Group, with the assistance of its independent financial and legal advisors.

Upon closing of the merger, Isramco will become an indirect wholly owned

subsidiary of Naphtha. Isramco is expected to remain headquartered in Houston, Texas. The merger is subject to approval by Isramco's stockholders, including a non-waivable condition requiring approval by the holders of a majority of the outstanding shares of Isramco common stock that are not beneficially owned by the members of the Naphtha Group or certain senior executive officers of the Company, as well as certain other customary closing conditions. The merger is not subject to a financing condition. The Company will call a meeting of stockholders for the purpose of voting on the adoption of the merger agreement in due course. If completed, the merger will result in the Company becoming a privately held company and Isramco's common stock would no longer be listed on the NASDAQ Capital Market.

Duff & Phelps, LLC is serving as sole financial advisor to the Special Committee and Norton Rose Fulbright US LLP is serving as legal counsel to the Special Committee. Baker Botts L.L.P. is serving as U.S. legal counsel to the Naphtha Group.

**The Proxy Omits Material Information**

23.        On September 6, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC. The Shareholder Vote on the Proposed Transaction is scheduled for October 22, 2019. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

24.        First, the Proxy omits critical financial projections regarding the free cash flows of the Company, despite these projections being heavily relied upon by the financial advisor. The failure to disclose free cash flow projections within the Proxy provides a misleading valuation picture of Isramco. "Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up." See *Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1125 (8th Cir. 2019) (citing *Mendell v. Greenberg*, 927 F.2d 667, 670 (2d

Cir. 1990)). In this case, only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. This must be the case as financial projections may easily be manipulated in order to fit a narrative. Consequently, regarding future events, uncertain figures, and other "soft" information, a company may choose either to remain silent or speak with full and comprehensive veracity—but it may not provide half-truths. Accordingly, free cash flow projections must be disclosed in order to correct the material deficiencies in the Proxy.

25.     Second, the Proxy contains materially incomplete and misleading information concerning the valuation analyses performed by the Special Committee's financial advisor, Duff & Phelps, LLC ("Duff & Phelps").

26.     Duff & Phelps performed a *Discounted Cash Flow Analysis* for Tamar Royalties, a fully-owned subsidiary of Isramco. With that respect to that analysis, the Proxy omits several key inputs and assumptions critical to arriving at their estimated asset values. Regarding Duff & Phelps' range of discounts rates, the Proxy completely omits the values of the estimated after-tax unlevered free cash flows, and the inputs and assumptions in estimating the weighted average cost of capital ("WACC") range at 7.25% to 9.25%. Also, in estimating the WACC range, the Proxy omits the individual multiples for the 14 companies selected for inclusion in the analysis.

27.     Duff & Phelps also performed a *Discounted Cash Flow Analysis* for each of Isramco Resources, Isramco Energy, and Jay Petroleum, which collectively are disclosed to comprise Isramco's U.S. Oil and Gas Exploration and Production Segment. With respect to those analyses, the Proxy also omits several key inputs and assumptions in arriving at their estimated asset values similar to the issues presented above. Regarding Duff & Phelps' range of discounts rates, the Proxy completely omits the values of the estimated unlevered free cash flows, and the

inputs and assumptions in estimating the WACC range at 8.25% to 10.25%. Also, in estimating the WACC range, the Proxy omits the individual multiples for the 9 companies selected for inclusion in the analysis.

28.     These items are material to Isramco shareholders, and their omission renders the summary of Duff & Phelps' *Discounted Cash Flow Analyses* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).

29.     Without the above-mentioned information, Isramco's shareholders cannot evaluate for themselves the reliability of Duff & Phelps' *Discounted Cash Flow Analyses*, and make a meaningful determination into whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Duff & Phelps, and so cannot make an informed decision regarding whether to vote in favor of the Proposed Transaction.

30.     With respect to Duff & Phelps' *Selected Public Companies Analysis*, the Proxy fails to disclose the individual valuation multiples Duff & Phelps calculated for each of the companies considered in the analysis. *See* Proxy at 32-33. A fair summary of the *Selected Public Companies Analysis* requires the disclosure of the individual valuation multiples for each company utilized; merely providing the mean and median values that a banker calculated is insufficient, as stockholders are unable to assess whether the banker utilized reasonable comparable companies, or, instead, selected unreasonable companies in order to make the Merger Consideration appear more favorable. Thus, the individual multiples must be disclosed to correct the deficiencies in the Proxy.

31.     Similarly, with respect to Duff & Phelps' *Selected Transactions Analysis*, the Proxy fails to disclose the individual valuation multiples Duff & Phelps calculated for each of the companies considered in the analysis. *Id.* at 33-34. For the same reasons mentioned above, the failure to disclose the individual valuation multiples for each of the 6 transactions that were reviewed and analyzed renders the summary of the analysis materially incomplete and misleading. Additionally, the Proxy fails to disclose the inputs and assumptions underlying the calculation of the estimated enterprise to LTM EBITDA multiples of 4.1x to 18.6x, nor the enterprise value to LTM revenue multiples ranging from 1.50x to 5.92x derived from the selected transactions. *Id.* The failure to disclose such information prevents Isramco's stockholders from evaluating for themselves the reliability of Duff & Phelps' *Selected Transactions Analysis* and the fairness of the Merger Consideration, and whether to vote in favor of merger.

32.     Third, the Proxy omits key information regarding the decision-making of the Special Committee and its recommendation to the Board to recommend the Proposed Transaction to shareholders. The Proxy fails to disclose: (i) uncertainties regarding Duff & Phelps' financial

analyses expressed during the January 10, 2019 meeting of the Special Committee; (ii) the future

employment and directorship of the Company's directors; (iii) both Naphtha's presentation to the

Special Committee and Duff & Phelps' presentation to Naphtha on April 3, 2019; and (iv) the

assumptions and methodologies leading to Duff & Phelps' suggestion that $140.00 per share was

the appropriate valuation of the company on April 3, 2019. The independence of the Special

Committee and decision-making process is critical for shareholders in probing the fairness of the

Proposed Transaction. It is of extraordinary importance in light of the "no solicitation" provision

which prevents the Individual Defendants from soliciting alternative proposals.

33.     In sum, the omission of the above-referenced information renders the Proxy

materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure

of the foregoing material information prior to the upcoming shareholder vote concerning the

Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to

vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable

harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9)**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set

forth herein.

35.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the

use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

38.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) free cash flow projections for the Company; (ii) inputs, assumptions and individual multiples underlying the valuation analyses performed by the financial advisor; (iii) the background of the merger and the independence of the Special Committee.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such

information to the Company's shareholders although they could have done so without extraordinary effort.

40.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Duff & Phelps reviewed and discussed its financial analysis with the Board, and further states that the Board considered the financial analysis provided by Duff & Phelps, as well as the fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Duff & Phelps' analysis in connection with their receipt of the fairness opinions, question Duff & Phelps as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy

or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

42.     Isramco is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

43.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Isramco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Isramco, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

14

46.   Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

48.   In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.   By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.   As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.   Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 8, 2019

**MONTEVERDE & ASSOCIATES PC**

_/s/ Juan E. Monteverde_
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite
4405 New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**KAHN SWICK & FOTI, LLC**
Michael J. Palestina, Esq.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Tel.: (504) 455-1400
Fax: (504) 455-1498
E-mail: Michael.Palestina@ksfcounsel.com

*Attorneys for Plaintiff*